# 23-828

In The

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

JANA ROMANOVA,

*Plaintiff-Appellant,*

v.

AMILUS INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE U.S. SOUTHERN DISTRICT OF NEW YORK (FOLEY SQUARE)

NO. 22-cv-8948-VEC, HON. VALERIE E. CAPRONI

## Brief for Plaintiff-Appellant

CRAIG B. SANDERS, ESQ.
SANDERS LAW GROUP
100 Garden City Plaza, Suite 500
Garden City, NY 11530
(516) 203-7600
csanders@sanderslaw.group

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................I

TABLE OF AUTHORITIES ........................................................II

STATEMENT REGARDING ORAL ARGUMENT ...........................VII

JURISDICTIONAL STATEMENT ..................................................1

STATEMENT OF THE ISSUES.......................................................1

STATEMENT OF THE CASE...........................................................5

SUMMARY OF THE ARGUMENT ..................................................14

STANDARD OF REVIEW ...............................................................16

ARGUMENT .................................................................................17

   I. THE DISTRICT COURT ERRED BY SUA SPONTE INVOKING
      THE FAIR USE DEFENSE ON BEHALF OF A NON-APPEARING
      DEFENDANT ......................................................................17

   II. THE DISTRICT COURT'S FAIR USE ANALYSIS IS
      FUNDAMENTALLY FLAWED..............................................21

     A. THE DISTRICT COURT'S CONCLUSION AS TO THE FIRST FAIR USE
       FACTOR IS ERRONEOUS ...................................................23

       i. The District Court's Analysis as to Non-Appearing Defendant's
         Purpose of Use is Erroneous .............................................31

       ii. The District Court's Analysis as to Non-Appearing Defendant's
         Character of Use is Erroneous............................................32

     B. THE DISTRICT COURT'S CONCLUSION REGARDING THE FOURTH
       FACTOR IS ERRONEOUS ...................................................34

     C. THE DISTRICT COURT'S RESOLUTION OF THE SECOND AND THIRD
       FAIR USE FACTORS IS SIMILARLY ERRONEOUS .........................36

CONCLUSION AND PRAYER FOR RELIEF....................................37

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ....................38

CERTIFICATE OF SERVICE .........................................................39

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. Artuz,*
   221 F.3d 117 (2d Cir. 2000) ...................................................................18

*Am. Geophysical Union v. Texaco Inc.,*
   60 F.3d 913 (2d Cir. 1994) ............................................................. 11, 20

*Am. Int'l Grp. Eur. S.A. (Italy) v. Franco Vago Int'l, Inc.,*
   756 F. Supp. 2d 369 (S.D.N.Y. 2010) ...................................................19

*Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith,*
   382 F. Supp. 3d 312 (S.D.N.Y. 2019) ............................................. 26, 27

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,* 143 S. Ct. 1258,
   215 L. Ed. 2d 473 (2023) ............................................................ passim

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith,* 11 F.4th 26 (2d Cir.
   2021), cert. granted, 142 S. Ct. 1412, 212 L. Ed. 2d 402 (2022), and aff'd
   sub nom. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,* 143 S.
   Ct. 1258, 215 L. Ed. 2d 473 (2023) .............................................. passim

*Arista Records LLC v. Doe 3,*
   604 F.3d 110 (2d Cir. 2010) ...................................................................21

*Associated Press v. Meltwater U.S. Holdings,*
   931 F.Supp.2d 537 (S.D.N.Y. 2013) .....................................................33

*Au Bon Pain Corp. v. Artect, Inc.,*
   653 F.2d 61 (2d Cir. 1981) ....................................................................19

*Authors Guild v. Google, Inc.,*
   804 F.3d 202 (2d Cir. 2015) ..................................................................20

*b.I.G.f.a.c.e. Entm't, Inc. v. Young Money Entm't, LLC,*
   No. 15 CV 5878-LTS, 2016 WL 5092598 (S.D.N.Y. Sept. 19, 2016) ...............19

*Barcroft Media, Ltd. v. Coed Media Grp., LLC,*
   297 F. Supp. 3d 339 (S.D.N.Y. 2017) ...................................................32

*Blanch v. Koons,*
  467 F.3d 244 (2d Cir. 2006) ........................................................................... 22, 23

*Bleistein v. Donaldson Lithographing Co.,*
  188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903) ................................................. 29

*Campbell v. Acuff–Rose Music, Inc.,*
  510 U.S. 569, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) ............................... passim

*Cariou v. Prince,*
  714 F.3d 694 (2d Cir. 2013) ........................................................................ passim

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
  150 F.3d 132 (2d Cir. 1998) .............................................................................. 10

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) .............................................................................. 17

*City of New York v. Mickalis Pawn Shop, LLC,*
  645 F.3d 114 (2d Cir. 2011) .............................................................................. 19

*Concession Consultants, Inc. v. Mirisch,*
  355 F.2d 369 (2d Cir. 1966) .............................................................................. 19

*Davis v. Bryan,*
  810 F.2d 42 (2d Cir. 1987) ................................................................................ 18

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
  983 F.3d 443 (9th Cir. 2020) .......................................................................... 3, 11

*E.E.O.C. v. Titan Waste Servs. Inc.,*
  No. 10-cv-379-MCR-EMT, 2014 WL 931010 (N.D. Fla. Mar. 10, 2014) .......... 10

*Evans v. Syracuse City School District,*
  704 F.2d 44 (2d Cir.1983) ................................................................................. 18

*Ferdman v. CBS Interactive Inc.,*
  342 F. Supp. 3d 515 (S.D.N.Y. 2018) ................................................................. 32

*Fox News Network, LLC v. TVEyes, Inc.,*
  883 F.3d 169 (2d Cir. 2018) .............................................................................. 35

*Gen. Motors Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist.*,
 85 N.Y.2d 232, 623 N.Y.S.2d 821, 647 N.E.2d 1329 (1995) ...............................19

*Guippone v. BH S & B Holdings LLC*,
 737 F.3d 221 (2d Cir. 2013) ...................................................................17

*Hardiman v. Reynolds*,
 971 F.2d 500 (10th Cir. 1992) .................................................................18

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
 471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) .....................................20

*Hart v. Westchester Cnty. Dep't of Soc. Servs.*,
 131 F. App'x 763 (2d Cir. 2005) ..............................................................17

*Infinity Broad. Corp. v. Kirkwood*,
 150 F.3d 104 (2d Cir. 1998) ..................................................... 20, 33, 35

*Johnson v. Rowley*,
 569 F.3d 40 (2d Cir. 2009) .....................................................................17

*LG Cap. Funding, LLC v. M Line Holdings, Inc.*,
 422 F. Supp. 3d 739 (E.D.N.Y. 2018) ........................................................19

*Mario v. P & C Food Markets, Inc.*,
 313 F.3d 758 (2d Cir. 2002) ...................................................................17

*Miller v. Wolpoff & Abramson, L.L.P.*,
 321 F.3d 292 (2d Cir. 2003) ...................................................................17

*Morris v. Schroder Capital Mgmt. Int'l*,
 445 F.3d 525 (2d Cir. 2006) ...................................................................17

*Nunez v. Caribean Int'l News Corp.*,
 235 F.3d 118 (1st Cir. 2000)....................................................................31

*NXIVM Corp. v. The Ross Inst.*,
 364 F.3d 471 (2d Cir. 2004) ........................................................... 20, 22

*O'Neil v. Ratajkowski*,
 563 F. Supp. 3d 112 (S.D.N.Y. 2021) ........................................................32

iv

*Santos v. District Council*,
    619 F.2d 963 (2d Cir. 1980) .................................................................18

*Schwartzwald v. Oath Inc.*,
    No. 19-CV-9938 (RA), 2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020)..............32

*Strauss v. Douglas Aircraft Co.*,
    404 F.2d 1152 (2d Cir.1968) ................................................................18

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014) ........................................................... 21, 24

*TCA Television Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016) ................................................................26

*Wright v. Warner Books, Inc.*,
    953 F.2d 731 (2d Cir. 1991) ................................................................34

*Yang v. Mic Network Inc.*,
    2022 WL 906513 (2d Cir. Mar. 29, 2022)........................................20


**Statutes**
17 U.S.C.
    § 101............................................................................................28
    § 106............................................................................................22
    § 106(2)........................................................................................28
    § 107............................................................................. 22, 23, 28
    § 107(1)........................................................................................23
    § 501..........................................................................................1, 2
    §107..............................................................................................5

28 U.S.C.
    § 1291............................................................................................1
    § 1331............................................................................................1
    § 1338(a) ......................................................................................1

**Rules**

Fed. R. Civ. Pro.

Rule 12(b)(6)..........................................................................................17
Rule 54(b) ..............................................................................................2
Rule 55(a)...............................................................................................2
Rule 55(b)(2)...........................................................................................2

Fed. R. App. P.

Rule 32(a)(7)(B).....................................................................................32
Rule 32(a)(7)(B)(iii) ..............................................................................32

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Given the significance of the issues to be determined, Plaintiff-Appellant respectfully requests an opportunity to present oral argument to the Court. The instant appeal concerns the District Court's determination to have raised the affirmative defense of fair use, *sua sponte,* on behalf of a non-appearing defendant and, upon so doing, ignoring precedent from this Court as to the proper metric for conducting such analysis. For this reason, Plaintiff-Appellant believes that oral argument will aid the Court in deciding the instant appeal.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant's action herein alleges claims of direct copyright infringement under Section 501 of the Copyright Act (17 U.S.C. § 501). Accordingly, the District Court had subject matter jurisdiction over the action below pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). The decision and Order dismissing Plaintiff-Appellant's Complaint, with prejudice, was entered on April 24, 2023. Plaintiff-Appellant timely filed her Notice of Appeal on May 23, 2023. This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291 because the appeal is taken from a final Order of the United States District Court for the Southern District of New York.

## STATEMENT OF THE ISSUES

The primary issue on appeal is whether the District Court erred when it *sua sponte* invoked the substantive affirmative defense of fair use on behalf of a non-appearing defendant. As a matter of procedural law, it was plain error for the District Court to raise a substantive affirmative defense on behalf of a non-appearing defendant, who bears the burden of proof to demonstrate such defense, and to thereby improperly shift the burden to Plaintiff to disprove a substantive, non-jurisdictional affirmative defense. This cannot stand.

In the case below, Plaintiff-Appellant Jana Romanova ("*Plaintiff*" or "*Romanova*") argued that defendant Amilus, Inc. ("*Non-Appearing Defendant*" or

"*Amilus*") infringed her rights in violation of 17 U.S.C. § 501, *et seq.* when it copied and displayed a photograph which Plaintiff had authored and registered with the United States Copyright Office. Plaintiff further argued that Amilus' infringement was willful because it continued to display Plaintiff's photograph on its website, despite having received two (2) pre-suit cease and desist letters from Plaintiff.

Despite having actual knowledge of the instant suit, Amilus did not respond to the Complaint or otherwise enter an appearance to defend the action below. As a result, Plaintiff filed a request for the Clerk to enter a Certificate of Default against Amilus pursuant to Fed. R. Civ. P. 55(a). On November 29, 2022, the Clerk entered the requested Certificate of Default and, on December 10, 2022, Plaintiff filed a proposed Order to Show Cause in accordance with the District Court's Individual Rules of Practice for seeking the entry of a default judgment against Non-Appearing Defendant.

On December 19, 2022, the District Court granted the Order and directed Non-Appearing Defendant to show cause as to why a default judgment should not be entered against it pursuant to Rules 54(b) and 55(b)(2) of the Federal Rules of Civil Procedure. Plaintiff appeared by counsel at the hearing in support of her motion for a default judgment and Non-Appearing Defendant did not appear.

The District Court did not grant Plaintiff's motion for a default judgment, however. Instead, on January 27, 2023, it Ordered Plaintiff to show cause, *sua*

*sponte,* as to why the case should not be dismissed on the grounds that Non-Appearing Defendant's unauthorized display of Plaintiff's copyright-protected photograph falls within the limited exceptions under the fair use doctrine. On February 10, 2023, Plaintiff responded to the Court's Order by Memorandum and Declaration. Notwithstanding Plaintiff's response, the District Court dismissed Plaintiff's Complaint—with prejudice—on its own motion.

The District Court's decision constitutes plain error and cannot stand. It is well established under Supreme Court precedent that fair use is an affirmative defense to copyright infringement and, therefore, the burden of proving such defense falls on the party asserting it.[1] By interposing an unpled, substantive, non-jurisdictional affirmative defense on the part of a non-appearing defendant, the Court abandoned its role as a neutral jurist and impermissibly assumed the status of a litigant and party opponent. Plaintiff has researched this issue and has found no case from any court in this Circuit wherein a trial court has raised a *substantive, non-jurisdictional* affirmative defense on the part of a non-appearing defendant.

Even if the District Court did not err in asserting a substantive affirmative defense on the part of a non-appearing defendant, the resulting decision on the merits

---

[1]     *Warhol II*, *infra*. 11 F.4th at 49 citing (*Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) ("Not much about the fair use doctrine lends itself to absolute statements, but the Supreme Court and our circuit have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use.")).

would still be erroneous insofar as the District Court ignored precedent from this Court, and affirmed by the Supreme Court, that should have led it to find that Non-Appearing Defendant's unauthorized use of Plaintiff's photograph was not sufficiently transformative (or transformative at all) so as to bring it within the ambit of the fair use doctrine. Instead, the District Court relied on an earlier line of cases which this Court recently clarified that such interpretations "stretch the fair use doctrine too far." The District Court's decision also ignored precedent from this Court (and subsequently affirmed by the Supreme Court) which admonished district judges from assuming the role of art critic and/or from considering the subjective intent of the accused infringer when considering the purportedly transformative nature of a secondary work.

Unless the District Court's decision is reversed, it will give rise to uncertainty in the adjudication of cases in this Circuit. Allowing such an outcome to stand would undermine a bedrock principle of federal jurisprudence by impermissibly shifting the burden to a plaintiff to disprove a substantive affirmative defense which the defendant, who ordinarily bears the burden, has failed to interpose. That shift would be even more inappropriate where, as here, no affirmative defense had been pled because the Non-Appearing Defendant has chosen to strategically default.

Plaintiff therefore raises the following questions on this appeal:

1. Did the District Court err by *sua sponte* raising the substantive affirmative defense of fair use, 17 U.S.C. §107, on behalf of a non-

4

appearing defendant and thereby shifting the burden to Plaintiff to disprove the defense?

2. Did the District Court err in finding as a matter of law that the fair use factors favored Non-Appearing Defendant under 17 U.S.C. §107?

Plaintiff respectfully submits that the foregoing questions should be answered in the affirmative. As such, Plaintiff respectfully submits that this Court should reverse and remand with instruction that Plaintiff's motion for a default judgment be granted as to liability against Defendant for copyright infringement.

## STATEMENT OF THE CASE

Plaintiff commenced this action on October 20, 2022, after discovering that Non-Appearing Defendant had expropriated a photograph authored by Plaintiff and for which Plaintiff holds a valid certificate of copyright registration (A7-A15). The Complaint alleges that Non-Appearing Defendant directly infringed Plaintiff's copyright by displaying her photograph on its paywall-protected website without license or permission from Plaintiff.

Plaintiff is a professional photographer by trade and licenses the works of her authorship to online and print publications (A15 at ¶ 10). Plaintiff relies on the right and ability to control the licensing and use of her photographs for her livelihood, insofar as she relies on the licensing fees for her photographs as her primary source of income (A55 at ¶ 29).

On September 29, 2017, Plaintiff authored a photograph of a woman

(Elizaveta Lavrienko) with a corn snake intertwined on her front torso and a ball python wrapped around her left hand (the "*Photograph*") (A9 at ¶ 2, A14 and A52 at ¶ 9). Plaintiff's purpose in authoring the Photograph was intended to showcase persons in her home country of Russia that kept snakes as pets; specifically, to capture pet snakes in common environments that are more associated with mainstream domesticated animals (A53 at ¶ 14). In creating the Photograph, it was Plaintiff's intention to license the image to content publishers who sought to use the work as part of their website(s) and/or other publications. (A52 at ¶ 7-A-53 at ¶ 15).

On October 3, 2017, Plaintiff applied to register the Photograph with the United States Copyright Office ("*USCO*") and the USCO issued a Certificate of Registration for the Photograph under Registration No. VA 2-071-921, with effective date of October 3, 2017. (A52 at ¶ 10-11; A38). Plaintiff subsequently licensed the Photograph to National Geographic to be used in an article titled "Intimate Photos of People and Their Beloved Pet Snakes" (A52 at ¶ 12). The article was displayed on National Geographic's website at URL: https://www.nationalgeographic.com/photography/article/pet-snakes-russia#/01-pet-snakesRomanova_Jana_Exotarium02.jpg (A52 at ¶ 12, A58).

Non-Appearing Defendant is the registered owner of the website located at www.ap-ai.com (the "*Website*") and is responsible for its content (A74; A9 at ¶ 18). The Website is monetized in that it sells merchandise to the public and Defendant

profits from these activities (A9 at ¶ 20; A74). More specifically, Defendant's Website is behind a paywall which requires visitors to pay a monthly membership fee in the amount of $4.95 to access content on the Website (A81).

On December 26, 2019, Plaintiff observed her Photograph on the Website in a story dated December 31, 2017, and titled "*Trending: Dogs, Cats … and Other Pets, to Start Off 2018*" (A9 at ¶ 24; A53 at ¶ 16; A71). The Photograph was displayed at URL: https://www.aiap.com/publications/article/22624/trending-dogs-cats-and-other-pets-to-start.html and was stored by Non-Appearing Defendant at URL: https://s3.amazonaws.com/media.aiap.com/dam/cropped/2017/12/19/9-snake_LkxgslJ.jpg (the "*Infringement*") (A9 at ¶¶ 25-26; A53 at ¶ 16).

The Infringement is an exact copy of the entirety of Plaintiff's Photograph that was volitionally copied by Defendant and posted to its commercial Website in a manner that was willful and/or in reckless disregard of Plaintiff's rights. (A10 at ¶¶ 30-35). Plaintiff did not grant Non-Appearing Defendant a license or any other permission to use her Photograph (A10 at ¶ 28; A11 at ¶ 48).

Upon learning of the Infringement, Plaintiff caused two letters to be sent to Non-Appearing Defendant with a demand that it remove the Infringement from the Website and cease and desist any further use of the Photograph (A10 at ¶ 36). Despite having received these notifications, Non-Appearing Defendant did not take down the Infringement, leading to the commencement of this action (Id.).

7

Plaintiff filed the Complaint in this action on October 10, 2022 (A7-15). Non-Appearing Defendant was served on October 28, 2022 (A36). Accordingly, any answer or other response to the complaint was due on or before November 18, 2022. Despite being duly served, Amilus never appeared to defend the action and, thus, no response was filed. As a result, on November 28, 2022, Plaintiff filed a request for a certificate of default as against Non-Appearing Defendant pursuant to Rule 55(a) (*Dkt. Nos*. 10-11). The Clerk issued the Certificate of Default on the following day (A37).

Following the issuance of the Certificate of Default, on December 10, 2022, Plaintiff filed a proposed Order to Show Cause seeking entry of a default judgment against Non-Appearing Defendant (A17-A43 and *Dkt. Nos*. 19-20)[2]. The District Court signed the Order and set the application down for a hearing on January 27, 2023, at 10:00 AM (A45). The District Court further instructed Plaintiff to serve a copy of the Order and its supporting papers on Non-Appearing Defendant (*Id.*). Plaintiff served the Order and its supporting papers on Non-Appearing Defendant as instructed (A47).

Prior to the hearing on the Order to Show Cause, Plaintiff filed a letter with the Court seeking leave to appear telephonically (A48-49). In support of this request,

---

[2]     The District Court's individual rules of practice require that a motion for default judgment be commenced by Order to Show Cause without emergency relief.

Plaintiff advised the Court that counsel had spoken with Non-Appearing Defendant's corporate officer who confirmed receipt of the Order to Show Cause, but reaffirmed Non-Appearing Defendant's position that it would not participate in the proceedings below or appear at the January 27, 2023, default judgment hearing (*Id.*). The District Court denied Plaintiff's request and advised that argument would proceed in person, as previously Ordered (*Dkt. No.* 27).

On January 27, 2023, Plaintiff appeared by counsel at the hearing in support of the motion for default judgment. The District Court did not grant Plaintiff's application but, instead, directed Plaintiff *sua sponte* to show cause as to "why this case should not be dismissed because the use of the photograph constitutes fair use under applicable copyright laws" (A50). On February 10, 2023, Plaintiff timely responded to the District Court's Order as directed, by both Declaration and Memorandum (A51-A72 and *Dkt. No.* 30).

On April 24, 2023, the District Court issued an opinion and order dismissing Plaintiff's infringement claim with prejudice on grounds of fair use. (A73-A86). In ruling on Plaintiff's application, the District Court noted "[a] Clerk's entry of default against a defendant for failure to appear does not automatically entitle Plaintiff to default judgment" (A75). "Before granting default judgment, the Court must be satisfied that the Complaint states a claim upon which relief can be granted" (*Id.*). While the District Court properly recognized that it was required to accept all of the

well-pleaded factual allegations of the Complaint as true by reason of Non-Appearing Defendant's default, it nonetheless held that "if [Non-Appearing] Defendant's use falls within the fair use doctrine, then Plaintiff has failed to state a claim." (A77).

The District Court's holding in this regard is procedurally erroneous. That is because, for purposes of determining Defendant's infringement liability on default, Plaintiff need only plead the *prima facie* elements of her infringement claim, which requires a showing of a valid copyright ownership and actual copying without authorization. *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). As a matter of law, Plaintiff is not required to plead facts sufficient to disprove any substantive affirmative defense to the claim. *See E.E.O.C. v. Titan Waste Servs. Inc.*, No. 3:10-cv-379-MCR-EMT, 2014 WL 931010, at *7 (N.D. Fla. Mar. 10, 2014) ("As this case is proceeding on a motion for default judgment, however, Plaintiff need only make out a *prima facie* case because Defendant cannot overcome any burden that would shift to it.")

The Supreme Court and this Court recognize that the fair use doctrine is an affirmative defense to a statutory claim for infringement which must be proven by the defendant. *Campbell v. Acuff Rose*, 510 U.S. at 590, 114 S.Ct. 1164 ("[s]ince fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets.");

10

*Authors Guild v. Google, Inc.,* 804 F.3d 202, 213 (2d Cir. 2015) ("As the Supreme Court has designated fair use an affirmative defense, *see Campbell,* 510 U.S. at 590, 114 S.Ct. 1164, the party asserting fair use bears the burden of proof." (citing *Am. Geophysical Union v. Texaco Inc.,* 60 F.3d 913, 918 (2d Cir. 1994)); *accord Dr. Seuss Enterprises, L.P., supra*, 983 F.3d at 459 ("the Supreme Court and our circuit have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use").

It is axiomatic that because the Complaint alleged sufficient facts to establish the *prima facie* elements of Plaintiff's infringement claim, namely copyright ownership and unauthorized copying, the default judgment should have been entered as to liability against Defendant without regard to any substantive affirmative defenses that could have been raised on the merits had Defendant bothered to appear.

Notwithstanding the foregoing, the District Court *sua sponte* interposed the defense on behalf of the non-appearing defendant. In so doing, the Court recognized that "fair use is a 'mixed question of fact and law,' necessitating 'an open-ended and context-sensitive inquiry'" and, as such "courts generally wait until summary judgement [sic.] to address fair use" (A76-77). Despite stating the governing standard, the District Court proceeded to conduct a fair use analysis, notwithstanding the fact that no such defense had been asserted by Non-Appearing Defendant and that the record for such a review was limited, at best. For example, even if Non-

Appearing Defendant had interposed the fair use defense, the record is devoid of any "favorable evidence about relevant markets" which could permit the District Court to render a decision concerning the fourth fair use factor. See *Campbell*, 510 U.S. at 590.

In conducting its fair use analysis, the District Court found that, even though Non-Appearing Defendant reproduced Plaintiff's Photograph in its entirety and without alteration (A85), it nonetheless found Non-Appearing Defendant's use to be "transformative" because the National Geographic article "was intended to showcase persons in [Plaintiff's] home country of Russia that kept snakes as pets, specifically to capture pet snakes in common environments that are more associated with mainstream domesticated animals." In contrast, the District Court found that Non-Appearing Defendant used the Plaintiff's Photograph to highlight "the ever-increasing amount of pet photography circulating online" (A79) (internal quotation marks omitted) which "communicate[d] something new and different from the original or expands its utility" (A80).

Having determined that the unauthorized secondary use was transformative, the District Court then discounted the other factors, such as the commercial nature of Defendant's use. *See* (A80-81) ("[a]lthough the Photo[graph] cannot be viewed on [Non-Appearing] Defendant's Website without a paid membership, thus weighing against a finding of fair use, this factor is not dispositive; [and] the Court

12

places even less significance on this factor considering the transformative nature of the secondary use" (A81).

With respect to the second fair use factor, which asks the Court to consider the nature of the copyrighted work, the District Court held that "[t]he Photo[graph] is indisputably creative and published," but nonetheless held that, given the "transformative nature of [Non-Appearing] Defendant's use … the second fair use factor weighs minimally, if at all, against a finding of fair use" (A82).

As to the third factor, asking the Court to consider the amount and substantiality of the of the portion used in relation to the copyrighted work as a whole, the District Court held:

> "While the Photo[graph] is displayed in its entirely, such use is reasonable in light of the purpose and character of the use: to demonstrate the prevalence and increasing popularity of online pet photography. Defendant appears to have used the Photo[graph] to provide visual context for the claim that the consumption of pet photography would continue its upward trajectory in 2018 … To achieve this purpose, it was reasonable for Defendant to include a full visual of the Photo[graph] — which is one of several that Plaintiff authorized for publication in the National Geographic article and is one of ten photographs of pets that Defendant featured in the Article [.] The utility of Defendant's secondary use is even more reasonable considering that the title of the Article explicitly references pet photography found online."

(A83).

As to the final fair use factor, asking the Court to consider the effect of the use upon the actual or potential market for the copyrighted work, the District Court held

13

that a "transformative market does not qualify as a traditional market" and further held that "Plaintiff has offered only conclusory and speculative assertions that Defendant's use has caused 'a meaningful or significant effect upon the potential market for the copyrighted work'." (A84). Accordingly, the District Court held that the fourth fair use factor weighs in favor of a finding of fair use.

The District Court's summary analysis of the fourth factor, which is based on its speculation concerning actual and potential markets for the Photograph, is particularly troubling in light of the Supreme Court's holding in *Campbell* which imposes the burden on a defendant to bring forward "favorable evidence of relevant markets." *Campbell*, 510 U.S. at 590. The District Court further minimized the importance of the fourth factor based on its own subjective interpretation of the purpose of the use to be transformative without any analysis of the degree to which the use has a further purpose or different character.

## **SUMMARY OF THE ARGUMENT**

The District Court's decision is clearly erroneous for a variety of reasons. First, the District Court erred by interposing the substantive affirmative defense of fair use on behalf of a non-appearing defendant. In doing so, the District Court improperly shifted the burden to Plaintiff to disprove the affirmative defense of fair use that had not been first proven by Non-Appearing Defendant. Moreover, the District Court's ruling is in direct contravention of longstanding Supreme Court

precedent, which requires the defendant to bring forward evidence of relevant markets to sustain its burden on the fourth factor.

Second, as to the merits, the District Court's fair use analysis is fundamentally flawed. The District Court ignored recent precedent from this Court in *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 45 (2d Cir. 2021) ("*Warhol II*"), cert. granted, 142 S. Ct. 1412, 212 L. Ed. 2d 402 (2022), and aff'd sub nom. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 215 L. Ed. 2d 473 (2023) ("*Warhol III*") which expressly clarified the earlier decisions from this Court on which the District Court relied, specifically, *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013).

In *Warhol II*, this Court stated that clarification of *Cariou* was necessary upon its observation that the decisions interpreting *Cariou* have "stretched the decision too far" when determining if a subsequent use of a copyrighted work is sufficiently transformative so as to satisfy the first prong of the fair use test. This is significant because, in *Warhol II*, the Court acknowledged that where a new work is found to be sufficiently transformative, it diminishes the significance of the remaining factors in determining whether a subsequent use of an existing work is "fair." Stated otherwise, when a district court finds that the copying of an existing work is sufficiently transformative, such a finding will necessarily taint the analysis of the remaining fair use factors. That is precisely what happened here.

15

The District Court's improper reliance on *Cariou* without any citation to *Warhol II* resulted in an overly broad analysis of the critical first factor, namely whether the Defendant's secondary use was sufficiently transformative. Moreover, the Supreme Court's recent holding in *Warhol III,* which was entered about a month after the District Court rendered its decision in this case, controls this Court's decision on appeal concerning the merits of the fair use defense. The High Court cited this Court's cautionary statement that a district judge "should not assume the role of art critic and seek to ascertain the intent behind or meaning of the works at issue" with approval. *Warhol III*, 143 S. Ct. at 1283. The Supreme Court also held a finding that a secondary use has a "sufficiently distinct purpose or character, without more, is *not* dispositive of the first fair use factor." *Warhol III*, 143 S. Ct. at 1273. As a result, the Supreme Court's far more narrow view of what constitutes a "transformative use" for determining whether an unlicensed use of a copyright protected work qualifies as a fair use of that work must be adopted by this Court upon review of the District Court's ruling.

## STANDARD OF REVIEW

The District Court's Order to Show Cause (Dkt. 28) did not set forth the applicable Rule under which the *sua sponte* motion was made, however, to the extent that the resulting discussion states that, in order to grant a default judgment, "the Court must be satisfied that the Complaint states a claim upon which relief can be

granted," Plaintiff interprets the District Court's *sua sponte* motion as being one to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) and addresses it as such here.

It is well settled that this Court's standard of review for both motions to dismiss and motions for summary judgment is *de novo*. *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (citing *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002) (motion to dismiss); *Mario v. P & C Food Markets, Inc*., 313 F.3d 758, 763 (2d Cir. 2002) (summary judgment). Applying this standard, this Court applies "the same standard as the district court itself was required to apply." *Hart v. Westchester Cnty. Dep't of Soc. Servs*., 131 F. App'x 763, 764 (2d Cir. 2005); *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (citing *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529 (2d Cir. 2006)).

## **ARGUMENT**

## I. **THE DISTRICT COURT ERRED BY *SUA SPONTE* INVOKING THE FAIR USE DEFENSE ON BEHALF OF A NON-APPEARING DEFENDANT**

As a core procedural matter, Plaintiff contends that the District Court committed reversible error by invoking the fair use doctrine to foreclose entry of default judgment as to Non-Appearing Defendant's liability for copyright infringement, which only requires Plaintiff to plead a *prima facie* showing of infringement (i.e., copyright ownership and actual copying). Here, because Amilus

17

did not enter an appearance in this action and did not file a response to the Complaint (despite its actual knowledge of the pendency of the action), it never interposed (let alone proved) the affirmative defense of fair use. The District Court acted in derogation of its judicial purview when it *sua sponte* interposed the affirmative defense on Non-Appearing Defendant's behalf. The District Court does not have the authority to raise or analyze the affirmative defense of fair use to counter the merits of Plaintiff's well-pled statutory claim, and Plaintiff respectfully submits that the District Court's action in so doing was an *ultra vires* act.

Under Second Circuit law, "courts should not raise *sua sponte* non-jurisdictional defenses not raised by the parties." *Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000).[3] Indeed, this Court has repeatedly expressed a general preference against a district court raising affirmative defenses *sua sponte*. *See, e.g., Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) (court should not raise a statute of limitations defense *sua sponte*); *Santos v. District Council*, 619 F.2d 963, 967 n. 5 (2d Cir. 1980) (citations omitted); *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir. 1968); *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir. 1983) (failure

---

[3]     The Second Circuit recognizes an exception to this general rule only "where a 'doctrine implicates ... values that may transcend the concerns of the parties to an action....'" *Acosta*, 221 F.3d at 122 (citing *Hardiman v. Reynolds*, 971 F.2d 500, 502-03 (10th Cir. 1992) (affirming power of district court to raise *sua sponte* defense of state procedural default in habeas case)). In the lower court, however, the District Court did not cite this exception, nor otherwise explain how the fair use doctrine, in this context of non-political commercial use, embodies values that may transcend the concerns of the parties to the action.

to raise defense of res judicata promptly results in waiver); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966) (lack of proper venue is personal defense which should not be raised by district judge absent extraordinary circumstances); *see also Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981) ("an affirmative defense is traditionally one that a defendant would have the burden not only of pleading but also of proving.").

Defendant's failure to appear and interpose the fair use defense constitutes a waiver of that defense. "Waiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." *LG Cap. Funding, LLC v. M Line Holdings, Inc*., 422 F. Supp. 3d 739, 754 (E.D.N.Y. 2018) (citing *Am. Int'l Grp. Eur. S.A. (Italy) v. Franco Vago Int'l, Inc*., 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) (quoting *Gen. Motors Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist*., 85 N.Y.2d 232, 236, 623 N.Y.S.2d 821, 647 N.E.2d 1329 (1995)).

In this vein, "when a party ... willfully default[s], district courts are not required 'to raise sua sponte affirmative defenses, which may, of course, be waived or forfeited[.]' " *b.I.G.f.a.c.e. Entm't, Inc. v. Young Money Entm't, LLC*, No. 15 CV 5878-LTS, 2016 WL 5092598, at *2 (S.D.N.Y. Sept. 19, 2016) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134-135 (2d Cir. 2011). It was therefore reversible error for the District Court to unilaterally interpose the affirmative defense of fair use on the part of a non-appearing defendant.

Compounding this error was the District Court's command to Plaintiff that she disprove the unpled defense under threat of dismissal with prejudice, as the District Court's actions in this regard operated to impermissibly shift the burden of proof from Non-Appearing Defendant to Plaintiff.

As this Court has repeatedly held, since fair use is an affirmative defense to a claim of infringement, the burden of proof is on its proponent. *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998) (citing *Campbell v. Acuff–Rose Music, Inc*., 510 U.S. 569, 590, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994); *American Geophysical Union v. Texaco, Inc*. 60 F.3d 913, 918 (2d Cir. 1994) (party claiming fair use "typically carries the burden of proof as to all issues in the dispute"); see also *Yang v. Mic Network Inc.*, 2022 WL 906513, at *1 (2d Cir. Mar. 29, 2022); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015) ("*Google, Inc.*"); *NXIVM Corp. v. The Ross Inst*., 364 F.3d 471, 476 (2d Cir. 2004) (defendant has the burden of proving that its use was fair) *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 603, 105 S. Ct. 2218, 2253, 85 L. Ed. 2d 588 (1985) (it is entirely appropriate to shift to the infringer the burden of showing that the infringement did not cause all the damages shown).

Particularly troubling is the District Court's analysis of the fourth fair use factor, which requires a factual analysis of the relevant markets for the copyrighted work. The High Court has instructed that the burden falls on the proponent of the

20

fair use doctrine to bring forth "favorable evidence of relevant markets." *Campbell* 510 U.S. at 590. Here, Defendant has failed to appear, let alone present any evidence of relevant markets; the District Court's decision should be reversed and remanded for that reason alone.

In light of the foregoing, Plaintiff-Appellant respectfully submits that the District Court erred in both invoking the fair use defense on behalf of an absentee defendant and requiring Plaintiff to disprove an unpled affirmative defense on which the defendant would have the burden of proof, had it not chosen to strategically default. It is clear that the Complaint sufficiently sets forth facts to support each element of Plaintiff's *prima facie* claim for infringement, and that is all that is required for the Court to enter default judgment as to liability against Defendant.

## II.    THE DISTRICT COURT'S FAIR USE ANALYSIS IS FUNDAMENTALLY FLAWED

As this Court has observed, "the Copyright Act of 1976 grants copyright holders a bundle of exclusive rights, including the rights to "reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of" the copyrighted work." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106)). Because copyright law recognizes the need for "breathing space," however, a defendant who otherwise would have violated one or more of these exclusive rights may avoid liability if he can establish that he made

"fair use" of the copyrighted material. *Id.* (citing *Campbell*, 510 U.S. at 579). Though of common-law origin, the doctrine of fair use is now recognized at 17 U.S.C. § 107, which provides that "the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." *Id.*

To evaluate whether a particular use qualifies as "fair use," the Court is instructed to engage in "an open-ended and context-sensitive inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). The Copyright Act directs that, in determining whether a particular use is fair, the factors to be considered shall include:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Though mandatory, these four factors are non-exclusive. Moreover, "[a]lthough defendants bear the burden of proving that their use was fair, they need not establish that each of the factors set forth in § 107 weighs in their favor." *NXIVM Corp.*, 364 F.3d at 476–77 (internal citation omitted). Rather, "[a]ll [factors] are to

be explored, and the results weighed together, in light of the purposes of copyright."
*Campbell*, 510 U.S. at 578, 114 S.Ct. 1164.

### A. THE DISTRICT COURT'S CONCLUSION AS TO THE FIRST FAIR USE FACTOR IS ERRONEOUS

The first fair use factor asks the court to consider the purpose and character of the accused infringing use, which the District Court described as being "the heart of the fair use inquiry is the purpose and character of the use." (A78) (citing *Blanch*, 467 F.3d at 251. To this end, the District Court correctly acknowledged that such inquiry "includes [at least] two considerations: whether the use is transformative and whether the use is of a commercial nature or is for nonprofit educational purposes." (Id.) (citing *Bill Graham Archives*, 448 F.3d at 608; 17 U.S.C. § 107(1)).

While the District Court's discussion in the foregoing regard is not entirely inaccurate, its application of the law to the facts was clearly erroneous. Specifically, the District Court held that the original purpose of the Photograph in a NATIONAL GEOGRAPHIC article (a use for which Plaintiff had duly licensed her Photograph) "was intended to showcase persons in [Plaintiff's] home country of Russia that kept snakes as pets, specifically to capture pet snakes in common environments that are more associated with mainstream domesticated animals," whereas Defendant's secondary use of Plaintiff's Photograph was to highlight "the ever-increasing amount of pet photography circulating online" (A79) (internal quotation marks omitted). This alleged distinction led the District Court to conclude that Non-

23

Appearing Defendant's use of Plaintiff's Photograph "communicate[d] something new and different from the original or expands its utility" (A80), notwithstanding its finding that Non-Appearing Defendant copied Plaintiff's Photograph in its entirety (A85).

In reaching this conclusion, the District Court relied primarily on *Cariou* and its progeny to find that a secondary use "can be transformative in function or purpose [even] without altering or actually adding to the original work." (A78) (citing *Swatch Grp.*, 756 F.3d at 84). The District Court's conclusion in this regard is clearly erroneous in light of this Court's recent decision in *Warhol II,* as well as under the Supreme Court's affirmance thereof in *Warhol III,* which substantially modified the transformative analysis. Taken together, these failures render the District Court's decision reversible error. To illustrate this point, a brief discussion of the *Warhol* series of decisions is warranted.

In *Warhol,* the photographer-copyright holder (i.e., Goldsmith) had taken a series of photographs of iconic musician Prince in or about December 1981, at a time when Prince was little more than an up-and-coming artist. Goldsmith subsequently licensed one or more of her photographs to VANITY FAIR who, in turn, made at least one photograph available to famed artist Andy Warhol who used the photograph to create fourteen silkscreen prints (twelve on canvas, two on paper) and two pencil illustrations (the "*Prince Series*"). *Warhol II,* 11 F. 4th at 34.

24

VANITY FAIR went on to publish an article about Prince in its November 1984 issue captioned "Purple Fame," which was accompanied by one of Andy Warhol's silkscreen renderings, based on Goldsmith's original photograph. The Warhol illustration included an attribution to Goldsmith, and Goldsmith was paid for same. *See, e.g., Warhol II*, 11 F.4th at 34. Upon Prince's death in April of 2016, Condé Nast (Vanity Fair's parent company) contacted the Andy Warhol Foundation for the Visual Arts, Inc. ("*AWF*")[4] to determine whether the was still in possession of the 1984 image, which Condé Nast desired to use in connection with a magazine intended to commemorate Prince's life. After learning that AWF had additional images from the Prince Series, Condé Nast ultimately obtained a commercial license for a different Prince Series image ("*Orange Prince*") for the cover of the planned tribute magazine. Condé Nast published the tribute magazine in May 2016 with the Orange Prince image on the cover. Goldsmith was not given any credit or attribution for the image, which was instead attributed solely to AWF.

Goldsmith first learned of the other "Prince Series" images upon seeing the 2016 Prince tribute magazine, at which time she contacted AWF to advise it of the perceived infringement of her copyright. Upon being so notified, AWF commenced an action against Goldsmith in the United States District Court for the Southern District of New York (captioned *Andy Warhol Found. For the Visual Arts, Inc. v.*

---

[4]     Successor to Warhol's copyright in the Prince Series.

*Goldsmith*, 382 F. Supp. 3d 312 (S.D.N.Y. 2019) ("*Warhol I*"), seeking a declaratory judgment of non-infringement or, in the alternative, for fair use. Goldsmith counterclaimed for infringement.

The district court in *Warhol I* granted summary judgment for AWF on its fair-use claim, finding that:

> (1) the Prince Series was 'transformative because, while the Goldsmith Photograph portrays Prince as 'not a comfortable person' and a 'vulnerable human being,' the Prince Series portrays Prince as an 'iconic, larger-than-life figure'; (2) although the Goldsmith Photograph is both creative and unpublished, which would traditionally weigh in Goldsmith's favor, this was 'of limited importance because the Prince Series works are transformative works'; (3) in creating the Prince Series, Warhol 'removed nearly all of the Goldsmith Photograph's protectible elements'; and (4) the Prince Series works 'are not market substitutes that have harmed – or have the potential to harm – Goldsmith'."

*Warhol II,* 11 F.4th at 36 (quoting *Warhol I*) (cleaned up). Goldsmith appealed.

On appeal, this Court reversed, finding that the district court erred in relying chiefly on the decision in *Cariou,* which this Court previously described as being not only the "high-water mark of our court's recognition of transformative works," but has also been met with criticism for being perceived as having established "simple bright-line rules" for determining whether a secondary work is transformative, whereas this Court announced that *Cariou* established no such rule. *Warhol II,* 11 F.4th at 38 (citing *TCA Television Corp. v. McCollum*, 839 F.3d 168, 181 (2d Cir. 2016) (collecting critical authorities). Continuing, this Court held that

"[a]lthough a literal construction of certain passages of *Cariou* may support that proposition, such a reading stretches the decision too far." *Id.* That is precisely what the District Court did in the case below.

In correcting the *Warhol I* court's interpretation of *Cariou,* this Court found that the the Prince Series was not transformative for purposes of application of the fair use doctrine, notwithstanding that "Warhol created the series chiefly by removing certain elements from the Goldsmith Photograph, such as depth and contrast, and embellishing the flattened images with loud, unnatural colors." *Warhol II* at * 43. To this end, this Court stated that "the district judge should not assume the role of art critic and seek to ascertain the intent behind or meaning of the works at issue. That is so both because judges are typically unsuited to make aesthetic judgments and because such perceptions are inherently subjective." *Id.* This Court further felt "compelled to clarify that it is entirely irrelevant to [the fair use] analysis that 'each Prince Series work is immediately recognizable as a 'Warhol'." *Id.* (citing *Warhol I*, 382 F. Supp. 3d at 326). In other words, the Prince Series works were significantly different artistic interpretations of the origial photograph with the inclusion of the tremendous artisitc talent of Andy Warhol. However, despite such alterations and creativity, this Court found the Warhol works to be non-transformative.

Upon reversal, AWF filed a petition for a writ of certiorari in the Supreme Court, which petition was granted. On appeal, the sole question before the Supreme Court was "whether the first fair use factor, 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes'," weighed in favor of AWF (as the district court found) or favored Goldsmith (as this Court found). On that narrow issue, the Supreme Court agreed with this Court's finding in *Warhol II*, holding that Warhol's Orange Prince was not sufficiently transformative, such that the first fair use factor would favor it, rather than Goldsmith.

In so holding, the Supreme Court held that " 'transformativeness' is a matter of degree." *Warhol III,* 143 S. Ct. at 1275 (citing *Campbell*, 510 U.S. at 579, 114 S.Ct. 1164). Continuing, the Court qualified "[t]hat is important because the word 'transform,' though not included in § 107, appears elsewhere in the Copyright Act. The statute defines derivative works, which the copyright owner has 'the exclusive righ[t]' to prepare, § 106(2), to include 'any other form in which a work may be recast, transformed, or adapted,' § 101. In other words, the owner has a right to derivative transformations of her work." *Id.*

The Court observed that "an overbroad concept of transformative use, one that includes any further purpose, or any different character, would narrow the copyright owner's exclusive right to create derivative works. To preserve that right, the degree

28

of transformation required to make 'transformative' use of an original must go beyond that required to qualify as a derivative." *Id.* To that end, the Court went on to hold that when "commentary has no critical bearing on the substance or style of the original composition... the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger." *Warhol III*, 143 S.Ct. at 1276. If applied too broadly, the Supreme Court cautioned that such findings of transformative use as the exception "would swallow the copyright owner's exclusive right to prepare derivative works." *Warhol III*, 143 S.Ct. at 1282.

The Supreme Court also cited this Court's caution that, when analyzing the first fair use factor, that "the district judge should not assume the role of art critic and seek to ascertain the intent behind or meaning of the works at issue" with approval. Continuing, the Supreme Court held that a "court should not attempt to evaluate the artistic significance of a particular work." *Warhol III*, 143 S.Ct. at 1283 (citing *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251, 23 S.Ct. 298, 47 L.Ed. 460 (1903) (Holmes, J.) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of [a work], outside of the narrowest and most obvious limits").

Further to this point, the Supreme Court went on to hold that "whether a work is transformative cannot turn merely on the stated or perceived intent of the artist or

29

the meaning or impression that a critic—or for that matter, a judge—draws from the work … [O]therwise, the law may well 'recogniz[e] any alteration as transformative.' " *Id* (alterations in original).

Summarily stated, the decision in *Warhol III* served to change how courts are instructed to interpret the first fair use factor, which the Court described as being "a matter of degree, and the degree of difference must be weighed against other considerations, like commercialism." *Warhol III*, 143 S.Ct. at 1273 (citing *Campbell,* 510 U.S. at 579). That is because "[a]lthough new expression may be relevant to whether a copying use has a sufficiently distinct purpose or character, it is not, <u>without more</u>, dispositive of the first factor." *Id.* (emphasis added).  In other words, the test for transformativeness became substantially more difficult for the secondary user who must now establish a substantial necessity in borrowing from the orignial work particularly, and not just the subject matter of the work, in order to claim their usage fair.

In light of the foregoing, the District Court's conclusion that it could determine that Non-Appearing Defendant's infringement of Plaintiff's Photograph was sufficiently transformative at this stage of litigation "by making a side-by-side comparison of the original work and the allegedly infringing use" (A78) was clearly erroneous insofar as such a side-by-side comparison would show Non-Appearing Defendant's use of Plaintiff's Photograph to be identical to that of the original image

30

(*compare* A58 with A71). This is particularly so because the first prong of the fair use test requires the trier of fact to consider both the purpose of use, as well as the character of use. While these concepts are related, they are different.

### i. The District Court's Analysis as to Non-Appearing Defendant's Purpose of Use is Erroneous

The District Court's analysis of National Geographic's licensed use of the Photograph versus that of Non-Appearing Defendant was also error. When analyazing the purpose of use under the first factor, courts look to the intended market of the original use as compared with the intended market of the secondary use. *See Nunez v. Caribean Int'l News Corp.*, 235 F.3d 118, 121 (1st Cir. 2000) (explaining why the purpose of defendant's secondary use was transformative, the court noted that "what is important here is that plaintiffs' photographs were originally intended to appear in modeling portfolios, not in the newspaper.").

In this case, the original intended use of Plaintiff's Photograph was to license it to media outlets such as National Geographic. Insofar as Defendant also holds itself out as a media outlet, Defendant's secondary use of the Photograph in the context of a putative news article is therefore for the exact same purpose for which Plaintiff authored the Photograph. Given that both the original and secondary uses are within the same industry of news reporting, there cannot be any transformation as to the purpose of use.

Indeed, as other Courts in the District below have observed, where an accused infringer uses an image in the same manner and for the same purpose as they were intended to be used, there is no transformative effect. *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 351 (S.D.N.Y. 2017); *Schwartzwald v. Oath Inc.*, No. 19-CV-9938 (RA), 2020 WL 5441291, at *5 (S.D.N.Y. Sept. 10, 2020); *O'Neil v. Ratajkowski*, 563 F. Supp. 3d 112, 129 (S.D.N.Y. 2021) ("when news sites have copied paparazzi photographs to document celebrities' lives, courts have determined those uses are not transformative"); *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 534 (S.D.N.Y. 2018) (citing *Barcroft* for the premise that the first fair use factor did not favor defendant because it "did not comment on, criticize, or report news about the Images themselves; instead, [defendant] used the Images as illustrative aids because they depicted the subjects described in its articles. [Defendant]'s argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law").

### ii.    The District Court's Analysis as to Non-Appearing Defendant's Character of Use is Erroneous

As for the character of use, the District Court's attempt to distinguish Plaintiff's original use from Defendant's secondary use is unavailing. Plaintiff created a photograph depicting a person who kept snakes as pets. Non-Appearing Defendant then used the identical photograph to depict the same image of a person

with snakes. The District Court fails to explain how using a photograph to depict pet snakes is any different from using a photograph to depict pet snakes in conjunction with other photographs of pet animals.[5]

Because Defendant's secondary use is so similar to the Photograph's original use, some other compelling justification for the unauthorized use of the Photograph is required. Copying the Photograph to help convey a new meaning or message alone is not enough for the first factor to favor fair use. *Warhol III*, 143 S.Ct. at 1285-1286. Moreover, "use of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998). In this case, repackaging the

---

[5]      Pursuant to the District Court's ruling, Defendant's secondary use was deemed transformative as a matter of law merely because the Plaintiff's registered photograph was displayed alongside other photographs of pets as part of single article. Under the District Court's theory of transformative fair use, it would be permissible for a movie theater to commercially exhibit the "Top Ten" highest grossing films of all time, as part of a curated film festival, but without having to obtain a license or otherwise account to the movie studios-copyright holders. As per the District Court's theory of transformative use, since the original purpose of a motion picture is to be exhibited on its own, then any secondary use of the motion picture within the context of a curated film festival would be deemed transformative. By the same token, under the District Court's ruling, a radio station would be permitted to broadcast the Top 40 songs of the day, without obtaining a license from the musician or songwriters under color of fair use, merely because the song was played in conjunction with other popular songs of the moment. Both examples would be clear-cut cases of infringement, regardless of the fact that the works were compiled into Top Ten or Top 40 lists. As such, the mere fact that Defendant grouped Plaintiff's Photograph with other similar photos as part of a curated list cannot automatically suspend the copyright holder's exclusive right to control distribution of her work.

original photograph as part of a "top ten" compilation of other photographs does not transform use of the image, it merely changes its format, which is not transformative. *Id.*

The above factors, taken together, stand for the premise that a photograph created for the purpose of news reporting cannot be "fairly used" by another news reporting agency, when such use is for the same character and purpose as the original. Further, the District Court's failure to acknowledge this Court's clarification of the "transformative" analysis set forth in *Cariou* in *Warhol II*, coupled with the Supreme Court's affirmance of *Warhol II* in *Warhol III* is not only telling, it is fatal to the decision.

### B. THE DISTRICT COURT'S CONCLUSION REGARDING THE FOURTH FACTOR IS ERRONEOUS

The fourth factor asks "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Warhol II,* 11 F.4th at 48 (citing *Bill Graham Archives*, 448 F.3d at 613). Analysis of this factor requires the court to "balance the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." *Id.* (citing *Wright v. Warner Books, Inc*., 953 F.2d 731, 739 (2d Cir. 1991)). To answer this question, the court "ask[s] not whether the second work would *damage* the market for the first (by, for example, devaluing it through parody or criticism), but whether it *usurps* the market for the first by offering a competing substitute." *Warhol*

34

*II,* 11 F.4th at 48 (italics in original). Here, it cannot be disputed that permitting a use such as that made by Non-Appearing Defendant would clearly usurp the market for Plaintiff's copryighted Photograph, as Non-Appearing Defendant reproduced same without any modification.

The District Court was required to consider whether "unrestricted and widespread conduct of the sort engaged in by [Non-Appearing Defendant] would result in a substantially adverse impact on the potential market" for Plaintiff's Photograph. *Warhol II,* 11 F.4th at 49 (quoting *Campbell*, 510 U.S. at 590, 114 S.Ct. 1164; *Fox News Network, LLC v. TVEyes, Inc*., 883 F.3d 169, 179 (2d Cir. 2018)). Further to this point, this Court held that:

> "the district court erred in apparently placing the burden of proof as to this factor on Goldsmith … While our prior cases have suggested that the rightsholder bears some initial burden of identifying relevant markets, we have never held that the rightsholder bears the burden of showing actual market harm. Nor would we so hold. Fair use is an affirmative defense; as such, the ultimate burden of proving that the secondary use does not compete in the relevant market is appropriately borne by the party asserting the defense: the secondary user. See *Campbell*, 510 U.S. at 590, 114 S.Ct. 1164 ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets."); *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998) ("As always, [the secondary user] bears the burden of showing that his use does not" usurp the market for the primary work); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) ("Not much about the fair use doctrine lends itself to absolute statements, but the Supreme Court and our circuit have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use.").

*Warhol II,* 11 F.4th at 49.

In light of the foregoing, the District Court's resolution of the fourth fair use factor in favor of Non-Appearing Defendant on the grounds that "Plaintiff has offered only conclusory and speculative assertions that Defendant's use has caused 'a meaningful or significant effect upon the potential market for the copyrighted work'" is clearly erroneous, as such a holding clearly shows that the District Court improperly shifted the burden to disprove this factor to Plaintiff, rather than placing the burden on Non-Appearing Defendant to bear its burden, as this Court has repeatedly held.

## C. THE DISTRICT COURT'S RESOLUTION OF THE SECOND AND THIRD FAIR USE FACTORS IS SIMILARLY ERRONEOUS

In its decision, the District Court found the second fair use factor (nature of the copyrighted work) and the third fair use factor (amount and substantiality of the portion used) to weigh minimally against a finding of fair use, or are otherwise neutral (respectively). Without belaboring the point, the District Court's holdings in this regard are unsound insofar as it judged these criteria through the prism of its earlier finding that "[t]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." (A78) (quoting *Campbel*, 510 U.S. at 579).

36

## CONCLUSION AND PRAYER FOR RELIEF

It is respectfully submitted that the District Court erred in raising the affirmative defense of fair use on behalf of a defendant who did not appear in the action below and advised Plaintiff that it had no intention of appearing or defending the claims. Even if the District Court did not err in raising such a defense *sua sponte,* its analysis of the fair use factors was fundamentally flawed insofar as the analysis rests on its interpretation of case law which this Court has subsequently clarified, and the District Court's decision does not comport with this Court's current analysis

In light of the foregoing, cause exists to reverse the decision of the District Court and remand with instruction that a default judgment be entered in favor of Plaintiff and against Non-Appearing Defendant.

Dated:        September 4, 2023

Respectfully submitted,

**SANDERS LAW GROUP**

*/s/ Craig B. Sanders*
Craig B. Sanders, Esq.
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 11553
Telephone: (516) 203-7600
csanders@sanderslaw.group

*Attorneys for Plaintiff-Appellant*

37

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    [x] this brief contains 9304 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    [ ] this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [x] this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman font, or

    [ ] this brief has been prepared in a monospaced typeface using _____ with _____.

    */s/ Craig B. Sanders*_____
    Craig B. Sanders, Esq.

38

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 5, 2023

**SANDERS LAW GROUP**

*/s/ Craig B. Sanders*
Craig B. Sanders, Esq.
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 11553
Telephone: (516) 203-7600
csanders@sanderslaw.group

*Attorneys for Plaintiff-Appellant*



Appellate Source, Inc.

Simplified. Appellate. Solutions.

85 West Main Street, Suite 201, Bay Shore, NY 11706
631-647-0659 – www.appellatesource.com